IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEAN S. SENECA,

Plaintiff,

v.

GREAT LAKES INTER-TRIBAL COUNCIL, INC.,

Defendant.

OPINION AND ORDER

21-cv-304-wmc

---

In this civil action, *pro se* plaintiff Dean S. Seneca claims that defendant, Great Lakes Inter-Tribal Council, Inc. ("GLITC"), terminated him from his position as Director of Epidemiology on the basis of his race, color, national origin/ancestry, age and sex, then retaliated against him for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Genetic Information Nondiscrimination Act of 2008 ("GINA"). This lawsuit is Seneca's third action challenging his termination, having filed two, previous Wisconsin state court actions. Defendant GLITC seeks dismissal (dkt. #9), invoking tribal sovereign immunity, just as it did in state court, further arguing that GLITC is not subject to suit under any of the federal statutes Seneca appears to be invoking. Since GLITC is entitled to tribal sovereign immunity in this court as well, defendant's motion to dismiss will be granted.

## ALLEGATIONS OF FACT[1]

### A. GLITC's status and function

GLITC is a Wisconsin non-profit, tax-exempt corporation owned and controlled by a consortium of federally recognized Indian tribes located in Wisconsin and the Upper Peninsula of Michigan, including: the Bad River Band of Lake Superior Tribe of Chippewa Indians, Forest County Potawatomi Community, Ho-Chunk Nation, Lac Courte Oreilles Bank of Lake Superior Chippewa Indians, Lac Vieux Bank of Lake Superior Chippewa Indians, Menomonee Indian Tribe of Wisconsin, Oneida Nation, Red Cliff Bank of Lake Superior Chippewa Indians, Saint Croix Chippewa Indians, Sokaogon Chippewa Community, and Stockbridge-Munsee Community. Governed by a Board of Directors composed of a delegate from each of the member tribes (usually a tribe's Chairperson or President), GLITC is funded by a combination of dues from member tribes and federal, state and private grants. Beyond member dues, it generates no revenue of its own, and all money GLITC receives through grants or other sources is directed into programs for its member tribes. Indeed, GLITC's stated purpose is to support its member tribes by providing service and assistance to them.

[1] For purposes of defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted). In addition, the court may consider documents referenced in the complaint, documents critical to the complaint, and information subject to judicial notice. *Geinosky v. city of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (documents referred to in the complaint and central to claim); *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This includes some information from the declarations of Catarina A. Colón and Shannon Holsey since the information they provide is either central to plaintiff's claim that tribal sovereign immunity does not apply or matters of public record.

GLITC is headquartered in Lac du Flambeau, Wisconsin, on lands of the Lac du Flambeau Bank of Lake Superior Chippewa Indians established by the Treaty of 1854. A significant majority of GLITC's operations and employees are also located within tribal boundaries, with only four of its approximate 65 employees living on non-tribal land. Its operations include providing government service systems and technical assistance to its member tribes to address the needs of tribal members living on or near reservations and tribal lands. GLITC presently offers programs for its member tribes related to: economic development, family and child services; aging, disability and elder services; health and epidemiology; prevention programs; and vocational training and rehabilitative services.

**B. Seneca's termination and discrimination complaints**

Plaintiff Dean Seneca held the position of director of Epidemiology at GLITC from December 2017 to August 2018. After several co-workers complained that he was acting unprofessionally and sexually harassing them, Seneca was terminated and promptly pursued an employment discrimination complaint. Specifically, in September of 2018, Seneca filed a complaint with the Equal Rights Division of the Department of Workforce Development ("DWD"), alleging that GLITC: (1) discriminated against him in the workplace based on his race, color, national origin/ancestry, age and sex; (2) discharged him because of his race and sex; and (3) retaliated against him after his termination.

An Equal Rights Officer dismissed the complaint on the grounds that GLITC was entitled to tribal sovereign immunity. Seneca appealed, and on September 20, 2019, an administrative law judge upheld the dismissal for that same reason. Seneca next filed a

petition for review by the Labor and Industry Review Commission ("Commission), and on June 22, 2020, the Commission issued a decision similarly holding that GLITC is not subject to the Wisconsin Fair Employment Act as a sovereign entity. Finally, Seneca filed a Petition for Review of the Commission's decision with the Vilas County Circuit Court, *Seneca v. Labor & Indus. Review Comm'n*, Case No. 2020-cv-84, which is currently pending.[2]

On May 4, 2020, while still awaiting the Commission's decision, Seneca also filed a separate lawsuit in Vilas County Circuit Court, naming as defendants GLITC, as well as current and former GLITC employees. *Seneca v. Field*, Case No. 2020-cv-38. On June 25, 2020, GLITC filed a motion to dismiss for lack of jurisdiction on the ground of tribal sovereign immunity. On October 7, 2020, the trial judge held a hearing on the motion and in an oral decision granted GLITC's motion. Accordingly, GLITC was dismissed as a party in that lawsuit.

OPINION

While defendant seeks dismissal of this action under both Federal Rule of Civil Procedure 12(b)(1) and (6), its motion is properly brought in this circuit under Rule 12(b)(6). *See Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818 (7th Cir. 2016) ("[T]his circuit has clearly held that the question of sovereign immunity is not a jurisdictional one.") (citations omitted). Defendant in particular seeks dismissal on two bases: (1) plaintiff's claims cannot proceed against it due to tribal sovereign immunity; and (2) Title, VII, the ADA, GINA and ADEA specifically exclude claims against an Indian

[2] The court has taken judicial notice of details of the state court proceedings, which are publicly available at Wisconsin Circuit Court access, https://wcca.wicourts.gov (last visited May 23, 2022).

tribe. Since defendant is entitled to tribal sovereign immunity in this court, the court limits its discussion to that issue.

Federally recognized Indian tribes are immune from suit in both state and federal courts unless Congress abrogates a tribe's sovereign immunity, or the tribe waives its right to invoke sovereign immunity. *Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 689 (7th Cir. 2011) (citing *Kiowa Tribe of Okla v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)). Moreover, and critical here, business entities owned and operated as arms of a federally recognized Indian tribe may assert the same immunity as the tribe itself. *See Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056, 1061 (W.D. Wis. 2010) ("In the absence of a clear waiver, suits against tribes (and tribal corporations) are barred by sovereign immunity.") (citing *Kiowa*, 523 U.S. at 753; *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir. 1993)); *Barker v. Menominee Nation Casino*, 897 F. Supp. 389, 394 (E.D. Wis. 1995) ("because 'an action against a tribal enterprise is, in essence, an action against the tribe itself,'" a tribal gaming commission and tribal casino employer were entitled to tribal sovereign immunity) (quoting *Local IV-302 Int'l Woodworkers Union of Am. v. Menomonee Tribal Enter.*, 595 F. Supp. 859, 862 (E.D. Wis. 1984)).

Given that GLITC is composed of and operated *solely* by federally recognized tribes and its members, with its sole purpose being to support its member tribes through service and assistance, there appears little question that this entity is entitled to assert sovereign immunity as an arm of those tribes. By way of comparison defendant directs the court to a decision from the Court of Appeals for the Tenth Circuit, *Dille v. Council of Energy Resource*

*Tribes*, 801 F.2d 373, 374 (10th Cir. 1986), in which the court considered whether a counsel of Indian tribes met the statutory definition of "Indian tribe" under Title VII, 42 U.S.C. § 2000e. *Id.* The *Dille* court addressed whether Title VII's exception extended to an entity composed of federally recognized tribes, but the same principles governing sovereign immunity generally were applied.

The entity at issue in *Dille*, the Council of Energy Resources Tribes ("CERT"), was structured similarly to GLITC and had a stated purpose "To improve the general welfare of Indian people through educational charitable and energy-related activities." *Dille*, 801 F.2d at 375. Like GLITC, CERT's board of directors also consisted of designated representatives of each tribe, insuring the member tribes' exclusive control over the operations of CERT. The Tenth Circuit agreed that CERT qualified as an Indian tribe as defined by Title VII because the "creation of CERT to advance the economic conditions of its thirty-nine member tribes is precisely the type of activity that Congress sought to encourage by exempting Indian tribes from the requirements of Title VII." *Id.* at 375-76. The court further found it illogical to believe that "Congress intended to protect individual Indian tribes but not collective efforts by Indian tribes." *Id.* at 376. Given all the similarities between GLITC and CERT, this decision offers a solid basis to find that GLITC is entitled to assert sovereign immunity here.[3]

Defendant further cites a multi-factor test to determine whether a tribe should

[3] While the court does not reach the merits of defendant's alternative argument that plaintiff's Title VII, ADA, GINA and ADEA claims, the reasoning in *Dille* would appear squarely on point to the extent plaintiff's claims in this lawsuit are limited to these federal statutes. Thus, even absent GLITC's assertion of sovereign immunity, plaintiff's statutory claims in this lawsuit would likely be subject to dismissal for failure to state a claim.

receive the benefit of sovereign immunity. In *McNally CPAs and Consulting v. DJ Host, Inc.*, 2004 WI App 221, ¶ 12, 277 Wis. 2d 801, 692 N.W.2d 347, the Wisconsin Court of Appeals considered the following *nine* factors to answer the narrow question of whether tribal sovereign immunity applies when an Indian tribe purchases all shares of an existing, for-profit corporation, then assumes its operations:

> (1) whether the corporation was organized under the tribe's laws or constitution;
> (2) whether the corporation's purposes are similar to those of the tribal government;
> (3) whether the corporation's governing body is comprised mainly or solely of tribal officials;
> (4) whether the tribe's governing body has the power to dismiss corporate officers;
> (5) whether the corporate entity generates its own revenue;
> (6) whether a suit against the corporation would affect the tribe's fiscal resources;
> (7) whether the corporation has the power to bind or obligate the funds of the tribe;
> (8) whether the corporation was established to enhance the health, education, or welfare of tribe members, a function traditionally shouldered by tribal governments; and
> (9) whether the corporation is analogous to a tribal governmental agency or is more like a commercial enterprise created to generate profits for its owners.

*Id.* Yet in a subsequent case, *Koscielak v. Stockbridge-Munsee Community*, 340 Wis. 2d 409, 811 N.W.2d 409 (Wis. Ct. App. 2012), the Wisconsin Court of Appeals endorsed a narrow application of the test, and further expressed disapproval of the factors as an effective reflection of the Supreme Court's *Kiowa* decision, finding no distinction between governmental and commercial activities of a tribe. *Id.* at 417-418, 811 N.W.2d at 456. Since the court has been unable to find any Seventh Circuit authority suggesting that this

multi-factor test should apply, the court is not bound to apply those factors here.[4] Regardless, all factors adopted in *McNally* point to immunity, and plaintiff has not persuasively established that these factors, or any other authority, suggest that tribal immunity does not extend to GLITC.[5]

Plaintiff's primary argument in opposition is that tribal sovereign immunity extends only to federally recognized tribes themselves, not to non-profit tribal entities such as GLITC. Plaintiff offers no supporting authority, directing the court instead to the United States Supreme Court's decent decision in *Yellen v. Confederated Tribes of Chehalis Reservation*,

---

[4] Recently this court applied a five-factor test from the Court of Appeals for the Ninth Circuit to determine whether an entity is an "arm of a federally-recognized Native American tribe" in the context of a claim under the False Claims Act's *qui tam* provision. *Mestek v. Taylor*, No. 21-cv-541-wmc, dkt. #27, at 9 (W.D. Wis. May 18, 2022). Notably, that test also considers the purpose and structure of the entity, as well as the financial relationship between the tribe and the entity in question.

[5] Even the organizational factor essentially applies, except that instead of GLITC being organized under the laws and constitution of a single tribe, it was organized under the laws and constitution of multiple, federally recognized tribes, something Congress has strongly endorsed their interests align and is hardly a distinction that supports an abandonment of each tribe's sovereign immunity. If anything, it is arguably bolstered. In fairness, as plaintiff points out, the Tenth Circuit held in *one* decision that one of the requirements for an entity to be entitled to sovereign immunity was that it be organized under tribal law as opposed to state law and in this case, GLITC was incorporated under Wisconsin law. *Somerlott v. Cherokee Nation Distribs.*, 686 F.3d 1144, 1149-50 (10th Cir. 2012). However, in *Somerlott* the entity at issue was a for-profit business, and other jurisdictions subsequently have found that tribal sovereign immunity applies to an entity incorporated under state law, particularly when the entity is a non-profit, like GLITC. *See McCoy v. Salish Kootenai Coll., Inc.*, 785 F. App'x 414, 415 (9th Cir. 2019) (tribal college incorporated under state law was entitled to tribal sovereign immunity); *Stathis v. Marty Indian Sch. Bd. Inc.*, -- F. Supp. 3d -- , 2021 WL 4255644, (D. S.D. Sept. 17, 2021) (school board that administered a school that was a tribal entity, was entitled to sovereign immunity despite incorporation under state law); *Cain v. Salish Kootenai Coll., Inc.*, CV-12-181-M-BMM, 2018 WL 2272792, at *1-4 (D. Mont. May 17, 2018) (college incorporated under tribal and state law entitled to sovereign immunity); *Rassi v. Fed. Program Integrators, LLC*, 69 F. Supp. 3d 288, 289, 291-21 (D. Me. 2014) (Maine limited liability company entitled to sovereign immunity because entity was owned by an Indian Reorganization Act § 17 corporation and it was formed to advance governmental objectives). The court is neither bound by the *Somerlott* decision, and it is inapposite in any event given GLITC's structure.

141 S. Ct. 2434 (2021), in which the Court held that Alaska Native regional and village corporations ("ANCs") were eligible for relief under the Coronavirus Aid, Relief and Economic Security Act. However, this decision does not advance plaintiff's position. In particular, the *Yellen* Court held that although the ANCs were not themselves federally recognized, since they were not "Indian tribes" under the statutory definition, they were nevertheless eligible for relief under the CARES Act. *Id.* at 2452. Importantly, the *Yellen* Court did not address tribal sovereign immunity or comment further about the distinction between federally recognized tribes and their non-profit, corporate arms that function to serve tribal members. As defendant properly points out, if anything, this decision would serve to broaden the scope of the definition of "Indian tribes," working to GLITC's advantage with respect to its sovereign immunity argument.

Plaintiff further argues that the court must heavily weigh the tribal liability factor from *McNally*, but again cites no legal authority for this position beyond the *McNally* decision itself. Even assuming these factors apply here, *and* this court is required to weigh the impact of tribal liability to a greater degree than the other factors, as previously alluded to, GLITC has detailed the adverse impact of a judgment against it: a decrease in funding available for tribal services due to the costs of litigation and a potential judgment against it. Plaintiff makes no effort to dispute this adverse impact.

Plaintiff's remaining arguments in opposition are unavailing. As a threshold matter, plaintiff's suggestion that the court should take up review of the Commission's decision is simply off the mark. This court does not have jurisdiction to review that decision. Rather, an appeal from a decision of the Commission must be taken in accordance with Wis. Stat.

§ 227.53(a)(1), which sets forth the procedures by which a petitioner would submit a decision for review in the appropriate county circuit court. Moreover, as previously noted, plaintiff already followed those procedures with respect to the Commission's decision by filing a petition for review in Vilas County Circuit Court in Case No. 2020-cv-84. Should plaintiff wish to appeal *that* decision, once it is issued, the next step would be for him to appeal the outcome to the Wisconsin Court of Appeals.

In addition, plaintiff asserts that GLITC waived its sovereign immunity by (1) receipt of federal grant money, and (2) making job announcements committing to follow federal and state law. However, a waiver of sovereign immunity must be explicit, and the bar for waiver is high: "to relinquish its immunity, a tribe's waiver must be clear." *C&L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001). Plaintiff has not met this burden. First, by accepting federal grant money, GLITC did not waive its tribal sovereign immunity. Plaintiff does not attempt to distinguish the cases finding that the acceptance of federal funding, even with an agreement not to discriminate in violation of federal law, does not constitute a waiver of tribal sovereign immunity. *See Dillon*, 144 F.3d at 583; *see also Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1286 (11th Cir. 2001) (even if tribe accepts federal funds in exchange for an implicit promise not to discriminate, the exchange "in no way constitute[s] an express and unequivocal waiver of sovereign immunity and consent to be sued."); *Hagen v. Sisseton-Wahpeton Cmty. College*, 205 F.3d 1040, 1044 n.2 (8th Cir. 2000) ("Nor did the College waive its immunity by executing a certificate of assurance with the Department of Health and Human Services in which it agreed to abide by Title VI of the Civil Rights Act of 1964."). Second, GLITC's

job announcements include no hint of a waiver. Plaintiff claims that GLITC's job announcement includes the following statement: "As an equal opportunity employer, GLITC intends to comply fully with all federal and state laws and the Information requested on this application will not be used for any purpose prohibited by law." (Dkt. #14 at 16.) Again, however, GLITC did not mention, much less explicitly waive, its tribal sovereign immunity in those announcements, so this waiver argument fails as well.

Plaintiff next argues that an application of tribal sovereign immunity here would implicate his Fourteenth Amendment due process rights. However, the Supreme Court has already considered and rejected this argument: "As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo*, 436 U.S. 49, 56 (1978). Moreover, the fact that plaintiff is left without recourse is not a reason to find no tribal sovereign immunity. *Miller v. Coyhis*, 877 F. Supp. 1262, 1266-67 (E.D. Wis. 1995) (defendant entitled to tribal sovereign immunity despite no available means for plaintiff to challenge defendant's conduct).

Finally, plaintiff argues that Public Law 280 and its amendments, the Indian Civil Rights Act of 1968, preempts tribal sovereign immunity. Again, however, the Supreme Court has already addressed this question and found that these laws do not amount to a waiver of that immunity. *See Three Affiliated Tribes of the Fort Berthold Reservation v. World Engineering*, 476 U.S. 877, 892 (1986) ("We have never read Pub.L.280 to constitute a waiver of tribal sovereign immunity, nor found Pub.L.280 to represent an abandonment of the federal interest in guarding Indian self-governance."). Accordingly, defendant is

immune from suit by plaintiff, and the court need not take up its alternative argument that any federal *statutory* claims lack merit because GLITC is expressly exempted from suit as an "Indian tribe."

ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss (dkt. #9) is GRANTED on the ground that plaintiff's complaint fails to state a claim upon which relief can be granted. The claims in this lawsuit are DISMISSED with prejudice.

2) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 23rd day of May, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge